**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**RANDY ROMERO**,
**WENG-HUAN YOONG**,
and **RAY SANCHEZ**,

    Plaintiffs,

vs.                                                                  No.   **CIV 01-0400 MCA/RLP**

**CITY OF ALBUQUERQUE**
and **PLEAS M. GLENN**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion for Summary Judgment* [Doc. No. 38] filed on March 4, 2002. Having considered the pleadings and exhibits of record, the relevant law, and otherwise being fully advised in the premises, the Court finds that grounds exist for denying Defendants' motion as explained below.

**I.    BACKGROUND**

This case is one of two civil actions brought by employees of Defendant City of Albuquerque who unsuccessfully applied for promotions to supervisory positions in the City's Parks and Recreation Department. The evidence of record and undisputed facts can be summarized in the light most favorable to Plaintiffs as follows.

Plaintiffs in this action are Randy Romero, Weng-Huan Yoong, and Ray Sanchez. Plaintiffs in the other, related action are Joseph Castillo, Danny Salas, and Carl Nieto. See Castillo v. City of Albuquerque, No. 01-0369 (D.N.M.May 23, 2002) (memorandum opinion and order denying defendants' motion for summary judgment).[1] Defendant Pleas Glenn was the Director of the Parks and Recreation Department during the relevant time. (Compl. ¶ 5; Answer ¶ 5.)

In a circular dated October 8, 1999, Defendants advertised an employment opportunity for the position of "Supervisor II" in the Parks and Recreation Department. (Ex. A to Defs.' Mem.) The City imposed a hiring freeze from November 8, 1999, until March 31, 2000, when a second circular was issued to advertise the same employment opportunity in the Parks and Recreation Department. (Ex. B, C to Defs.' Mem.) The job title and qualifications listed in the second circular differ in some respects from those listed in the first circular. (Ex. A, C to Defs.' Mem.; Lawson Dep. at 13.) Neither circular lists the number of positions that Defendants were seeking to fill or specifies that those positions related to building maintenance or grounds maintenance. (Ex. A, C. to Defs.' Mem.; Lawson Dep. at 11-12; Glenn. Dep. at 46-47.)

Messrs. Romero, Yoong, Sanchez, Castillo, Salas, and Nieto were among the individuals who applied for the employment opportunity advertised in the circulars. The

---

[1] It appears that some of the evidence attached to the parties' briefs in this case was obtained through discovery in Castillo, No. 01-0369, supra. Although no one has moved to consolidate the two actions, the Court finds such evidence to be appropriate for consideration in ruling on Defendants' summary judgment motion in this case in light of Plaintiffs' theory that the two positions at issue were filled from a common pool of applicants.

City also received applications for this employment opportunity from Michael Nelson, Roger Vallejos, and Joseph Padilla.  (Ex. 1, 3 to Sanchez Dep.)  At some point, the applications of these nine individuals went through a pre-qualification process and were divided into two groups. (Ex. D to Defs.' Mem.)  The application of another individual, Kenneth Mitchell, was added to one of the groups at a later date.  (Ex. 1, 2 to Montoya Dep.)

Applicants in each group were interviewed by a separate panel.  Pete Turpin was in charge of one panel, and Tom Ellis was in charge of the other panel.  (Ellis Dep. at 24-25; Glenn Dep. at 21-22; Turpin Dep. at 16.)  Records used by the two panels in scoring or ranking the applicants during the interview process are sparse.  Nevertheless, the notes and deposition testimony of one of the interviewers indicates that Mr. Turpin's panel recommended the following five applicants in order of preference for a supervisory building maintenance position:  Michael Nelson, Ray Sanchez, Kenneth Mitchell, Weng-Huan Yoong, and Randy Romero.  (Lucero Dep. at 36-37; Turpin Dep. at 26-28.)  According to Mr. Ellis's deposition testimony, the interviewers in his panel recommended the following five applicants in order of preference for a supervisory grounds maintenance position:  Roger Vallejos, Joseph Padilla, Joseph Castillo, Danny Salas, and Carl Nieto.  (Ellis Dep. at 29, 39-40.)

The applicants recommended by the two panels subsequently were combined into a single group.  A memorandum from Mr. Ellis to Defendant Glenn dated May 16, 2000, lists the following applicants in order of preference "who were interviewed for the two Maintenance Crew Supervisor Positions" that were vacant on that date:  Michael Nelson,

-3-

Roger Vallejos, Raymond Sanchez, Joseph Padilla, Kenneth Mitchell, Joe Castillo, Weng-Huan Yoong, Danny Salas, Randy Romero, and Carl Nieto. (Ex. I to Defs.' Mem.) The memorandum does not specify which applicants were recommended for the building maintenance position and which applicants were recommended for the grounds maintenance position.

On May 19, 2000, Defendant Glenn briefly interviewed the top five applicants listed on the memo of May 16, 2000. (Ex. K to Defs.' Mem.; Glenn Dep. at 72-73.) According to Defendant Glenn, he asked each person he interviewed to answer "five specific questions" in order to show him "that they wanted this, that they were ready for this, that they really wanted to be in a management and supervisory [r]ole." (Glenn Dep. at 23.)

> [O]ne of them was: Why should I select you? One of them was: What have you done in the last couple of years to prepare yourself for this position? One of them was: Give me your – what is your management philosophy? How do you manage people? How do you get people to work hard? What's your incentive? How do you discipline people when people don't work? What is your management style?

(Glenn Dep. at 76.)

After conducting these interviews, Defendant Glenn selected Michael Nelson to fill the position of Maintenance Crew Supervisor for the Department's Facility Maintenance Crew and Kenneth Mitchell to fill the position of Area Supervisor for grounds maintenance. (Ex. L to Defs.' Mem.) As a result, neither of these positions were offered to Messrs. Vallejos, Sanchez, Padilla, Castillo, Yoong, Salas, Romero, or Nieto.

Defendant Glenn testified at his deposition that he based these hiring decisions upon the recommendations that were made to him and the brief interviews that he himself conducted. (Glenn Dep. at 65.) In his affidavit, however, Defendant Glenn mentioned that he was impressed by Mr. Mitchell's past performance on a project to renovate the Mayor's Office. (Ex. 6 to Pltfs.' Resp.; Glenn Aff. ¶ 3.) The evidence of record also shows that Defendant Glenn selected Mr. Mitchell for the grounds maintenance position even though Mr. Ellis's panel did not interview or recommend Mr. Mitchell for that position.

Defendant Glenn admitted that he did not review the applicants' personnel files or resumes, and he did not think it would have mattered to him whether the recommended applicants were grouped into separate categories for each position. (Glenn Dep. at 64-65, 74-75.) He further testified that he was primarily interested in the applicants' leadership abilities rather than their particular experience in plumbing or grounds maintenance. (Glenn Dep. at 75.) Plaintiffs dispute that such an interest in leadership abilities was the real reason for Defendants' hiring decisions and claim that they were more qualified than Mr. Nelson or Mr. Mitchell. (Romero Dep. at 57-60; Sanchez Dep. at 42-43, 59-60; Yoong Dep. at 31-32.)

## II.   ANALYSIS

### A.   Standard of Review

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of

law. A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if it might affect the outcome of the case. See id. at 248. Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Where circumstantial evidence is the basis for a claim of employment discrimination brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e to 2000e-17 (1994 & West Supp. 2002), the burden of proof at the summary-judgment stage is determined according to the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000). Under this framework, the employee must establish a prima facie case of unlawful discrimination in order to survive a motion for summary judgment. If the employee establishes a prima facie case, then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision that is alleged to be unlawful. If the employer meets this burden, then summary judgment is warranted unless the employee can show that there is a genuine issue of material fact as to whether the reasons proferred by the employer are pretextual or whether his race, age, gender, or other illegal consideration was a determinative factor in the employment decision. See Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 147-49 (2000); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).

A plaintiff in an employment discrimination case can show pretext by presenting evidence that the reasons proferred by the employer are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that the employer did not act for those reasons. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). In particular, such pretext may be shown by evidence concerning the "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).

### B.  Plaintiff's Employment Discrimination Claim

Defendants do not dispute that Plaintiffs in this action (as well as the plaintiffs in Civil. No. 01-0369) have made a prima facie showing of employment discrimination. They each belong to a minority group. They were qualified for at least one position for which they applied, and both positions were filled by non-minority employees. (Def. Mem. at 6; see Castillo, No. 01-0369, supra, slip. op. at 1-2.)

Defendants assert, however, that there is a legitimate, nondiscriminatory business reason for its decision to hire Mr. Nelson and Mr. Mitchell, namely, that they were the best qualified for the positions based on their education, experience, and performance during the interviews. (Def. Mem. at 6; see Castillo, No. 01-0369, supra, slip. op. at 4.) Applying the

McDonnell Douglas framework to Defendant's summary-judgment motion, the Court determines that Defendants have met their burden of production with regard to this assertion. Consequently, the dispositive issue in this case is whether Plaintiffs have shown one or more genuine issues of material fact concerning whether the reasons proferred by Defendants are pretextual. See Reeves, 530 U.S. at 147-49; Kendrick, 220 F.3d at 1226.

The Court determines that Plaintiffs have met this burden for the purpose of defeating Defendants' summary-judgment motion because, when viewed in the light most favorable to Plaintiffs, the evidence of record and the undisputed facts support a reasonable inference that Defendants' hiring decisions in this case involved "disturbing procedural irregularities" and "the use of subjective criteria." Simms, 165 F.3d at 1328. In particular, there exists a genuine issue of material fact concerning whether the individuals who were hired for the two positions advertised in the two circulars respectively dated October 8, 1999, and March 31, 2000, met the qualifications listed in those circulars. There also exists a genuine issue of material fact concerning whether Mr. Glenn substituted his own subjective hiring criteria in place of the more objective qualifications referenced in the circulars and in the groupings established by the two interview panels.

From the evidence of record and the undisputed facts, a jury could reasonably infer that because Mr. Mitchell was hired for the grounds-maintenance position despite the fact that he was not interviewed or recommended for that position by Mr. Ellis's panel, Plaintiffs also could have been hired for that position despite the fact that they were not interviewed or recommended for that position by Mr. Ellis's panel. At least one Plaintiff in this case, Mr.

Sanchez, was ranked higher on the list of the top ten applicants than Mr. Mitchell. Combined with the evidence indicating that Defendants hired the only two non-minority applicants from this list, a reasonable factfinder could rationally infer from this evidence that Defendants' proferred reasons for its hiring decisions in this case are pretextual. See Morgan, 108 F.3d at 1323.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that there exist genuine issues of material fact which preclude summary judgment in Defendants' favor.

**IT IS, THEREFORE, ORDERED** that ***Defendants' Motion for Summary Judgment*** is **DENIED**.

**SO ORDERED**, this 30th day of October, 2002, in Albuquerque, New Mexico.

                                        **M. CHRISTINA ARMIJO**
                                        United States District Judge